**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x

RAMON HERNANDEZ, on behalf of himself,        Case No. 17-cv-09541-KPF
FLSA Collective Plaintiffs, and the Class,

                                    Plaintiffs,

        v.

BTB EVENTS & CELEBRATIONS, INC. d/b/a
BETWEEN THE BREAD, et al.,

                                    Defendants.

--------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <u>MOTION TO DECERTIFY CONDITIONAL COLLECTIVE ACTION</u>

Respectfully submitted,

**SMITH, GAMBRELL & RUSSELL, LLP**

By: ___s/ *Todd R. Dobry*_____
Todd R. Dobry (*Pro hac vice*)
E-mail: tdobry@sgrlaw.com
Yash B. Dave (*Pro hac vice*)
E-mail: ydave@sgrlaw.com
50 N. Laura Street, Suite 2600
Jacksonville, Florida  32202
Telephone:  (904) 598-6100
Facsimile:  (904) 598-6247

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND .............................................................................2

        A.      Defendants' Business ..............................................................................2

                1.      BTB Has Robust Policies and Procedures to Ensure Proper
                        Payment for All Time Worked ....................................................4

        B.      Plaintiff and Opt-Ins ...............................................................................4

III.    APPLICABLE STANDARDS OF LAW ...........................................................9

IV.     PLAINTIFFS ARE NOT SIMILARLY SITUATED.......................................11

        A.      Plaintiffs Cannot Establish a Common Policy, Plan, or Scheme
                of Minimum Wage Violations ...............................................................12

        B.      There Is No Common Policy or Plan in Violation of the
                FLSA That Negatively Impacted Mr. Hernandez and the Opt-Ins........14

V..     DISPARATE FACTUAL AND EMPLOYMENT SETTINGS
        FAVOR DECERTIFICATION ........................................................................17

VI.     INDIVIDUALIZED DEFENSES WARRANT DECERTIFICATION ...........17

VII.    DECERTIFICATION   IS   WARRANTED   BECAUSE   PLAINTIFF   HAS   NOT
        DEMONSTRATED A SUFFICIENT SHOWING OF INTEREST OF OTHERS TO JOIN
        THE SUIT…………………………………………………………………………19

# TABLE OF AUTHORITIES

**Cases**

*Fu v. Mee May Corp.*,
    2016 WL 1588132 (S.D.N.Y. Apr. 20, 2016).......................................................................

*Gardner v. Western Beef Properties, Inc.*,
    2013 WL 1629299 (E.D.N.Y. Mar. 25, 2013) ...................................................................

*Gayle v. Harry's Nurses Registry, Inc.*,
    2012 WL 686860 (E.D.N.Y. Mar. 2, 2012) ......................................................................

*Hernandez v. The Fresh Diet, Inc.*,
    2014 WL 5039431 (S.D.N.Y. Sept. 29, 2014)...................................................................

*Hoffman-LaRoche v. Sperling*,
    493 U.S. 165 (1989)........................................................................................................

*Islam v. BYO Co. (USA), Ltd.*,
    2017 WL 2693717 (S.D.N.Y. June 20, 2017) ..................................................................

*Jianmin Jin v. Shanghai Original, Inc.*,
    2018 WL 1597389 (S.D.N.Y. Apr. 2, 2018)......................................................................

*Kuebal v. Black & Decker, Inc.*
    643 F.3d 352 (2d Cir. 2011)............................................................................................

*Lee v. ABC Carpet & Home*,
    236 F.R.D. 193 (S.D.N.Y. 2006) ....................................................................................

*Morano v. Intercontinental Capital Grp., Inc.*,
    2012 WL 2952893 (S.D.N.Y. July 17, 2012) ..................................................................

*O'Hara v. Menino*,
    D.Mass.2003, 253 F.Supp.2d 147 ...................................................................................

*Romero v. H.B. Auto Grp., Inc.*,
    2012 WL 1514810 (S.D.N.Y. May 1, 2012) ....................................................................

*Ruiz v. Citibank, N.A.*,
    93 F.Supp.3d 279 (S.D.N.Y. March 19, 2015) ................................................................

*Thind v. Healthfirst Mgmt. Servs., LLC*,
    2016 WL 7187627 (S.D.N.Y. Dec. 9, 2016) ....................................................................

*Zivali v. AT&T Mobility, LLC*,

784 F.Supp.2d 456 (S.D.N.Y.2011).................................................................................

**Rules and Statutes**

29 U.S.C. § 203(t)................................................................................................................

29 U.S.C. § 206(a)(1)..........................................................................................................

29 U.S.C. § 207....................................................................................................................

29 U.S.C. § 216(b)...............................................................................................................

## I.     <u>INTRODUCTION</u>

The named Plaintiff, Ramon Hernandez, is a former employee of BTB Events & Celebrations, Inc. ("BTB") who claims, albeit in an entirely cursory conclusory manner, that he and other "FLSA Collective Plaintiffs"[1] did not properly receive minimum wage for all hours worked, and worked overtime without proper compensation. In similar fashion, Plaintiff also alleges that Defendants improperly retained tips. These claims are asserted under the Fair Labor Standards Act ("FLSA"). Plaintiff also alleges violations of state wage and hour laws.

On April 16, 2018, Plaintiff filed a letter motion for leave to file a motion for conditional certification [DE 42]. No formal motion was made. Rather, on May 23, 2018, Plaintiff and the Defendants – through prior counsel – submitted a joint letter to the Court advising that the parties reached an amicable resolution to Plaintiff's apparent intent to seek conditional collective certification under §216(b) of the FLSA. *See*, [DE 48]. While the notion of collective action in this case has been, and remains, disputed and unwarranted, the parties agreed to initial conditional certification of a FLSA collective of catering assistants employed by Defendants[2] for a three (3) year period. *id*.

On May 25, 2018, the Court further approved the conditional collective certification, as well as the proposed Notice of Pendency (the "Notice") and Consent to Join forms ("Consent Forms"), and allotted a 30-day opt-in period. The Notices and Consent Forms were then mailed to a stipulated list of 18 catering assistants.

---

[1] Plaintiff defines FLSA Collective Plaintiffs as "all tipped employees (including delivery workers, caterers and food preparers) employed by Defendants on or after the date that is six years before the filing of the Complaint." First Amended Complaint [DE 24] (the "Complaint").

[2] As further discussed herein, the only entity and employer of "catering assistants" was, and is, solely BTB.

1

To date, Plaintiff's counsel has evaded inquires, and not disclosed, when the Notices and Consent Forms where mailed. While Defendants have been prevented from determining whether the 30-day opt-in period was complied with, and in turn the propriety of the filed Consent Forms, it remains that eleven (11) catering assistants filed their consent to join this case as opt-in plaintiffs by July 13, 2018. *See,* [DE 55-65].[3]

Several months after the opt-in period expired, unauthorized communications and solicitations by Plaintiff, the existing opt-ins, or Plaintiff's counsel, resulted in four (4) additional opt-ins on November 5, 2018. These employees were not part of the parties' stipulated list of 18 catering assistants, and indeed, includes individuals outside of the catering assistant position.

For the reasons discussed further herein, Defendants now respectfully request that the Court decertify the FLSA collective action and dismiss the claims of all 15 Opt-Ins.[4]

## II.   FACTUAL BACKGROUND

### A.   Defendants' Business

BTB provides corporate catering and special event services to individuals and organizations. *See,* **Exhibit 1**. At all relevant and material times, BTB's catering and events business has been located at, and operated out of its facility on 145 West 55th Street, New York, NY 10019. *Id*. More specifically, the 55th Street address houses BTB's catering department – including all catering personnel and offices, as well as its kitchen. *Id*. The 55th Street address also features a boutique counter-service eatery. *Id*.

---

[3] It must be emphasized that while each of the opt-in forms may very well have been submitted after the close of the 30-day opt-in period, the Consent to Sue filed by Mustapha Njie, does not conform to the Consent Form approved by the Court. *See* [DE 65]. Rather, it aligns with the prior opt-in notice filed by Mr. Hernandez. [DE 33]. Given the troubling circumstances surround multiple declarations prepared by Plaintiff's counsel in support of the denied Motion for Injunctive Relief [DE 67], these discrepancies are especially suspect.

[4] While Mr. Hernandez also filed his consent to join a collective action, as the named Plaintiff he is excluded from the 15 Opt-Ins for ease of reference.

Mr. Sean Martin, serves as the Chief Operations Officer and Director of Events for BTB. *See* **Exhibit 1**. Mr. Martin and Ms. Eisen work out of BTB's corporate offices located at 115 W 45th St. 7th Floor. *Id*. Both Ms. Eisen and Mr. Martin conduct their day-to-day duties and responsibilities from this location. *Id*. Neither of them have direct or immediate duties, supervisory, or managerial responsibilities over the non-managerial employees in the catering department. *Id*. The catering department has designated managers and supervisors at the 55th Street address who are responsible for the day-to-day catering business, including but not limited to; scheduling employees, staffing and fulfilling catering orders, and often times, hiring of catering personnel such as catering assistants. *Id*.

Between the Bread 40th, Inc. ("BTB 40th") is separate and independent of BTB Events & Celebrations, Inc. **Exhibit 4**. Indeed, BTB 40th does not offer any catering or special events services. *Id*. It does not employ catering assistants, maintains its own employees, managers, and operates a healthy and farm-to-table eatery at 204 East 40th Street, New York NY 10016. *Id*. At no time has Mr. Hernandez, or any of the Opt-Ins been employees of or compensated by BTB 40th. *Id*. Neither have they ever worked out of its location, been subject to any of its policies, procedures, or been managed or supervised by a BTB 40th employee. *Id*. The absence of any reasonable basis for being named a party to this lawsuit is self-evident from the complete lack of any factual allegation in Plaintiff's operative pleading. *See generally*, [DE 24].

Similarly, there is no cognizable grounds for naming Between the Bread 55th, Inc., or Between the Bread II, Ltd. *see* **Exhibit 2**; **Exhibit 3**. While Ms. Eisen previously registered these companies, Between the Bread 55th, Inc. has never existed in any form other than on paper. *Id*. It has never engaged in commerce of any kind, had employees, or generated revenue of any kind. *Id*. Between the Bread II, Ltd. was created for a contemplated, but never acted upon business

venture. *Id.*  It too has never engaged in commerce, had employees, or generated revenue.  Thus, it must be noted that neither Bread 55th, Inc. and Between the Bread II, Ltd. are subject to the requirements of, and are otherwise not "employers" as defined by the FLSA.

### 1. BTB Has Robust Policies and Procedures to Ensure Proper Payment for All Time Worked

BTB has always implemented policies and procedures that ensure compliance with all applicable laws, rules, and regulations, including measures to ensure that Plaintiff and its employees are properly paid for all time worked.  These include the use of wage rates, time keeping requirements, that overtime policies that satisfy the minimum wage and overtime requirements of New York and federal law.  **Exhibit 1** at ¶¶ 26-28. BTB also maintains and enforces policies to ensure that its tipped employees receive the 100% of the tips they reserve from customers and to ensure that its pricing/invoicing practices give adequate notice to customers so that no charge can be somehow misconstrued as a gratuity. *Id.* at ¶¶ 21-22.  Until recently, BTB also provided its employees – including Plaintiff – with paid bona fide meal breaks as an added benefit to its employees. *Id.* at ¶¶ 23-27.

### B. Plaintiff and Opt-Ins

*Ramon Hernandez*

Underscoring the insufficiency of the Complaint [DE 24], Plaintiff was actually hired by BTB on November 13, 2015 as a catering assistant.  Mr. Hernandez earned $9.00 per hour as a tipped food service employee. *See*, **Exhibit 1**, Composite Exhibit "A".  Mr. Hernandez's employment ended, effective July 14, 2017. *Id.* ¶ 14.  At all times Mr. Hernandez was compensated exclusively by BTB and was not an employee of, or employed (in any capacity) by any of the other named defendants. *See generally Id.*; *see also*, **Exhibit 1**, Composite Exhibit at D.

*Luis O. Criollo*

4

Luis Criollo is a catering assistant employed by BTB. *Id.* at ¶31. He was first hired as a catering assistant on May 24, 2006. *Id.* Three years prior to the filing of his Consent Form, Mr. Criollo earned a regular cash hourly wage of $9.00/hr. plus tips and was paid an overtime premium rate of $13.50/hr. for every hour worked in excess of 40 working hours in a given workweek. *Id.*, Composite Exhibit D. In 2018, his rates increased to $9.80/hr. and $14.70/hr. as the overtime premium rate plus tips. *Id.* at ¶30 He currently earns $10.00/hr. and an overtime rate of $15.00/hr. plus tips. *Id.*

### Constantino Fernandez

Constantino Fernandez was employed by BTB as a catering assistant from October 8, 2014 through his voluntary job abandonment on November 21, 2018. *Exhibit 1* at ¶ 32. Despite attempts to contact him, Mr. Fernandez was unresponsive. *Id.* Based on his last communications with the Catering Manager, it is possible that Mr. Fernandez may reside out of state. *Id.* His payroll records show that during a three (3) year period back from the date of filing the Consent to Sue [DE 62] that Mr. Fernandez (as the person is identified in BTB's records) received a regular cash wage of $9.00/hr. and $13.50 per hour for hours worked in excess of 40 compensable hours worked in a given work week. *Id.*

### Carlos Gonzalez Loaiza

Mr. Gonzalez is employed by BTB and primarily serves as a catering assistant. *Id.* He has been an employee since August 21, 2014. Mr. Gonzalez sometimes works as a baker. *Id.* While working as a baker, Mr. Gonzalez is managed and directly supervised by BTB's Head Baker in the kitchen at 55th Street. *Id.* For example, during the pay period for November 30, 2016, he worked 26 hours as a baker and received $12.00/hr. To the extent he is working as a baker for

hours in excess of 40, he would receive the one and half times his hourly rate of pay. **Exhibit 1**, Composite Exhibit D.

### *Ruben Irigoyen*

Mr. Irigoyen has been a BTB employee, and catering assistant since September 19, 2014. *Id.* His hourly rates during his employment align with the rate structure of other catering assistants. *Id.*

### *Susana Jeronimo*

Ms. Jeronimo is an employee of BTB and a catering assistant. *Id.* She has held this position with BTB since June 8, 2007. *Id.* Going back three (3) years from the date she filed her Consent Form, her regular hourly rate was $9.00/hr. plus tips in 2015, 2016, and 2017. *Id.* During those years, she received $13.50/hr. for hours worked in excess of 40 hours in a given workweek. *Id.* In 2018, her regular hourly rate increased to $9.80/hr. plus tips, and $14.70/hr. overtime time in excess of 40 hours per work-week. *Id.* Currently, she earns a regular cash wage of $10.00/hr. plus tips and an overtime premium rate of $15.00/hr. *id.*

### *Jose Martinez*

Jose Martinez was not part of the stipulated conditional collective notice list because he is not a catering assistant. *Id.* Mr. Martinez was hired on December 12, 2006 as a driver and has maintained that position to date. *Id.* In 2014, his regular cash wage rate was $11.00/hr. and was paid an overtime premium of $16.50/hr. for every hour worked in excess of 40 hours. *Id.* In 2015 those rates increased $14.00/hr. and $21.00/hr., respectively. *Id.* Starting in 2018 through the present, his cash wage rates increased to $15.00/hr. and $22.5/hr., respectively. *Id.*

As a driver, Mr. Martinez is responsible for driving a BTB vehicle, and safely transporting co-workers as well as catering and event items as part of his daily duties. *Id.* On such occasions,

he may receive tips that are gratuitously provided directly from customers (i.e. cash tips), or receive his *pro rata* share of any tips that are designated via account, credit card, or catering orders received through third-party services. *Id*. Drivers must maintain the general cleanliness of the interior of the vehicles, including regular sanitation and cleanings to comply with necessary health and safety standards. *Id*. In addition to driving, Mr. Martinez's duties and responsibilities may also require that he perform as a catering assistant and satisfy that position's job requirements. However, as a driver, he is more regularly supervised and managed by the Head Dispatcher. *Id*. He also does not initially arrive to the 55th Street location to commence work like other BTB employees. *Id*. Instead, he first must travel to where BTB stores its delivery van and truck in Brooklyn. *Id*.

<u>Jorge Menendez</u>

Mr. Menendez began working for BTB on November 22, 1993 and is employed as its Head Driver. *Id*. at ¶44. Depending on the circumstances and needs for a particular job or event, Mr. Menendez would, in addition to his responsibilities as a driver, occasionally serve as a Catering Assistant. Essentially, he would drive the food and beverage to the designated location and then enter the client's office or event space and provide equivalent services to those of his colleagues. On such occasions, Mr. Menendez received tips for his direct involvement in providing catering services. Notably, and notwithstanding his occasional receipt of tips, Mr. Menendez's regular hourly cash wage was $14.00 per hour in 2015-2017. As a "tipped employee" under the FLSA, Mr. Menendez, as well as Mr. Martinez, were always regular hourly wages above both the federal and New York minimum hourly wage and were not subject to any form of tip credit – even as it may relate to New York wage requirements. *Id*. For example, in 2013 and 2014, Mr. Menendez received $14.00/hr. for up to 40 hours worked in a week, and an overtime rate of $16.50/hr. for

7

hours of work in excess of 40 work hours, plus tips.  *Id*.  In 2015 through 2017 he received $14.00/hr. and $21.00/hr. plus tips. Beginning in 2018, his regular hourly rate was increased to $15.50 an hour which equates to an overtime rate of $23.25/hr. plus tips.

### Gil Moreno

Gil Moreno has been an employee of BTB since May 12, 2010, and has served as a catering assistant through his ongoing employment.  **Exhibit 1** at ¶ 39

### Mustapha Njie

Mr. Njie was an employee of BTB from November 29, 2017 through July 2, 2018.  At all times during his tenure, Mr. Njie worked as a catering assistant and was compensated with the same regular hourly cash wage and overtime premium wage as his colleagues.  *Id*. at ¶ 38.

### Jose Reyes

Jose Reyes was hired by BTB on October 2, 2017 and was a catering assistant until the end of his employment on August 24, 2018.  *Id*. at ¶ 37

### Mario Rojas

Mario Rojas is employed as a Catering Captain, or "Captain."  In this position he is responsible to attending catering events and serving clients and their guests either food or drinks.  For each catering or special event, Mr. Rojas is compensated for a minimum of 5 hours, regardless of whether he actually works the full amount of time.  He is paid $30.00 per hour, plus tips he may receive.  When he is not working as a Captain, Mr. Rajos is available to work as a catering assistant.  He was first employed by BTB on March 20, 2008.  *Id*. at ¶33

### Ramiro Sanchez-Garcia

Ramiro Sanchez-Garcia was hired on October 17, 2012 and remains employed by BTB as a catering assistant.  His rates of pay align with the other catering assistants.  *Id*. at ¶ 36.

*Eduardo Villegas Lopez*

Eduardo Villegas Lopez was hired by BTB as a catering assistant on November 09, 2016 and worked in that capacity through February 26, 2018. *Id*. at ¶35.

*Michael Marte*

Michael Marte was hired as a catering assistant by the Catering Manager and Human Resources on December 11, 2017 and concluded his employment shortly on December 21, 2018. He was compensated consistently with the rates and premiums of other catering assistants. *Id.* at 35

## III.   APPLICABLE STANDARDS OF LAW

Pursuant to § 216(b), the FLSA authorizes collective actions for "similarly situated" employees. 29 U.S.C. § 216(b). "When deciding whether to certify a class under 29 U.S.C. § 216(b), district courts in the Second Circuit apply a two-step process." *Morano v. Intercontinental Capital Grp., Inc.* 2012 WL 2952893 at *4 (S.D.N.Y. July 17, 2012). The first step is generally described as "conditional certification." *See Kuebal v. Black & Decker Inc.*, 643 F.3d 352, 357 (2d Cir. 2011). "At the second step, typically the defendant moves for decertification, and 'the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" *Ruiz v. Citibank, N.A.*, 93 F.Supp.3d 279, 297 (S.D.N.Y. March 19, 2015) (quoting, *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). "At this second stage, '[t]he court must apply a more 'stringent standard' of proof … for determining whether the plaintiffs are similarly situated for the purposes of the FLSA." *Id*. at 297-98 (quoting, *Morano*, 2012 WL 2952893 at *5) (alterations in original).[5]

---

[5]   To emphasize the more "stringent standard" of proof required of representative plaintiffs at the second stage, Defendants note that even under the more modest standard governing conditional certification, "certification is not

9

While the Second Circuit does not yet prescribe a definitive method or set of factors for determining whether plaintiffs are similarly situated, district courts typically consider (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective treatment.]" *Morano*, 2012 WL 2952893 at *5 (quoting, *Zivali v. AT & T Mobility, LLC,* 784 F.Supp.2d 456, 460 (S.D.N.Y.2011)) (internal quote and citation omitted).

"However, even where the plaintiffs identify a company policy or practice, variations among the opt-ins may still warrant decertification." *Gardner v. Western Beef Properties, Inc.*, 2013 WL 1629299 at *4 (E.D.N.Y. Mar. 25, 2013) (citing, *Morano*, 2012 WL 2952893) (decertifying "off-the-clock" action involving 75 opt-ins because, even though there was a "systemically applied company policy or practice" of not compensating employees for overtime, "four variables ... divide[d] members of the Class" and prevented the court from conducting "an efficient and fair trial").  Courts may also "deny conditional certification where a plaintiff 'endeavors to represent an overly broad class' or 'includes no concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions.'" *Fu*, 2016 WL 1588132 at *3 (quoting, *Mata v. Foodbridge LLC*, No. 14 Civ. 8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015)).

---

automatic." *Romero v. H.B. Auto Grp.*, *Inc.*, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012).  As this Court previously opined in *Fu v. Mee May Corp.*, a plaintiff's modest showing "must still be based on some substance,' and '[a] plaintiff must provide some actual evidence of a factual nexus between him and the rest of the class he seeks to represent; conclusory allegations will not suffice.'"  2016 WL 1588132 at *2 (S.D.N.Y. Apr. 20, 2016) (KPF) (quoting respectively, *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) and *Reyes v. Nidaja, LLC*, No. 14 Civ. 9812 (RWS), 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015).

Where the named plaintiff fails to meet his or her burden and where the court otherwise finds that the collective members are not sufficiently "similarly situated," "the [collective] is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the [collective] representative may proceed on his or her own claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

## IV.    PLAINTIFFS ARE NOT SIMILARLY SITUATED

"When a defendant moves for decertification, the plaintiff bears the burden to prove that the opt-in plaintiffs are similarly situated." *See*, *Thind v. Healthfirst Mgmt. Servs., LLC*, 2016 WL 7187627, *2 (S.D.N.Y. Dec. 9, 2016) (citing, *Elfoulki v. Brannons Sandwich Shop, LLC*, No. 14 Civ. 5964, 2016 WL 1736203, at *2 (S.D.N.Y. May 2, 2016)).[6]   This burden requires evidence beyond the allegations in the plaintiff's complaint to show that the "Defendants engaged in a policy, plan, or scheme of FLSA violations." *Gayle v. Harry's Nurses Registry, Inc.*, 2012 WL 686860 at *5 (E.D.N.Y. Mar. 2, 2012); *see also Ayers*, 2007 WL 646326 at *5.   Said differently, it is Plaintiff's burden to prove that he and all of the Opt-Ins are similarly situated with respect to the claims at issue, and that this case involves "common issues of law and fact arising from the same alleged [unlawful] activity," *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989), such that all issues pertaining to liability, damages, and defenses can be proven based on universal evidence and without the need for individualized analyses, the equivalent of individual trial for each Opt-In, prejudice, or potential offense to Due Process.

Where plaintiffs have not shown, or cannot show, "a common policy that operated to common effect, or some other mode of evidencing shared experiences, they cannot proceed as a collective

---

[6] *See also*, *Morano*, 2012 WL 2952893 at *5 (citing, *Ayers v. SGS Control Servs.*, 2007 WL 646326, at *4 (S.D.N.Y. Feb 26, 2007)).

action." *Ruiz*, 93 F.Supp.3d at 300 (citing, *Hernandez v. The Fresh Diet, Inc.*, 2014 WL 5039431, at *4 (S.D.N.Y. Sept. 29, 2014)).

In this case, the alleged putative collective class is defined as "all tipped employees (including delivery workers, caterers and food preparers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case…" [DE 24 at ¶15].

### A.   Plaintiffs Cannot Establish A Common Policy, Plan, or Scheme of Minimum Wage Violations

As alleged, Mr. Hernandez claims that he and the Opt-Ins are similarly situated because they "have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper minimum wage for all hours worked …" [DE 24 at ¶16].  This definition of an unlawful employment policy is insufficient in and of itself to show that the plaintiffs in this case are similarly situated. *Jianmin Jin v. Shanghai Original, Inc.*, 2018 WL 1597389, at *4 (S.D.N.Y. Apr. 2, 2018) (slip copy) (defining an unlawful policy akin to "fail[ing] to pay employees for all hours worked… is far too abstract to show that the plaintiffs are similarly situated).  That said, to the extent Plaintiff attempts to circumvent this fatal flaw, consideration of all potential minimum wage allegations in conjunction with the discovery record in this case overwhelmingly shows – as a matter of law and fact – that Plaintiff and the Opt-Ins are not similarly situated.  Ultimately, Plaintiff cannot carry his burden to show a common practice causing him and the Opt-Ins to suffer from similar minimum wage violation experiences.

The FLSA requires employers to pay workers a minimum wage of $7.25 an hour.  29 U.S.C. §206(a)(1).  A "tipped employee" is defined by the FLSA as, "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  29 U.S.C. § 203(t),  "In the case of tipped employees, '[t]he FLSA permits employers to take a tip

credit up to 50% of the minimum wage except that the credit 'may not exceed the value of the tips actually received by the employee.'" *Jianmin Jin*, 2018 WL 1597389, at *4 (S.D.N.Y. Apr. 2, 2018) (quoting, *Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 239–40 (2d Cir. 2011) (quoting,  29 U.S.C. § 203(m)).  Indeed, "the FLSA permits the employer to claim a tip credit of up to $5.12 per hour and pay a reduced minimum wage of as little as $2.13 per hour…" *Islam v. BYO Co*. (USA), Ltd., 2017 WL 2693717, *4 (S.D.N.Y. June 20, 2017) (quoting, *Azeez v. Ramaiah*, No. 14 CIV. 5623 PAE, 2015 WL 1637871, at *4 (S.D.N.Y. Apr. 9, 2015) (quoting 29 U.S.C, § 203(m), 203(t)).

Plaintiff's own pay records indicate that he was compensated with an hourly cash wage of $9.00.  *See*, **Exhibit** 1, Composite Exhibit D.  This amount is above the federal minimum wage required by the FLSA.  29 U.S.C. §206(a)(1).  Accordingly, no tip credit against the federal minimum wage exists.  It follows that if Mr. Hernandez was never paid less than the minimum wage required by the FLSA, he did not experience a common policy or practice in violation of § 206(a)(1), and he cannot possibly be "similarly situated" to the Opt-Ins.  This is especially true considering that all of the Opt-Ins were also paid above the FLSA's statutory minimum wage.  *See*, Exemplary Pay Records of Opt-Ins attached as Composite Exhibit D.

As there was no common policy violating the minimum wage requirements of the FLSA, Plaintiffs cannot proceed as a collective action. *Ruiz*, 93 F.Supp.3d at 300 (citing, *Hernandez,* 2014 WL 5039431, at *4 (decertifying collective action because "Plaintiffs are unable to carry their burden to demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs" (internal alterations and quotation marks omitted)).  "To find otherwise would reduce Section 216(b)'s requirement that plaintiffs be

"similarly situated" to a mere requirement that Plaintiffs share an employer, a job title, and a professed entitlement to additional wages." *Id*.

"[A] plaintiff cannot simply state his belief that others are similarly situated based on conversations with or observations of those other potential opt-in members; rather, he must supply additional detail regarding the particular conversations or observations substantiating that belief." *Fu*, 2016 WL 1588132 at *2.  "There is a consensus in this district that where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations." *Id*. (internal quote omitted) (citing, *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) ("Plaintiff does not, however, provide *any* detail as to a *single* such observation or conversation. As a result, the Court does not know where or when these observations or conversations occurred, which is critical in order for the Court to determine the appropriate scope of the proposed class and notice process." (emphasis in original)).

### B.   There Is No Common Policy or Plan In Violation of the FLSA That Negatively Impacted Mr. Hernandez And The Opt-Ins

Plaintiff's FLSA Collective Action allegations are that Plaintiff and FLSA Collection Plaintiffs were "not paid one half times the regular rate for work in excess of forty (40) hours per workweek."  While it is not clear whether it is alleged as part of his FLSA or state law claim(s), Plaintiff also alleges that Defendants would not pay overtime premiums until an employee worked 42.5 hours in a given workweek.  [DE 24 at ¶ 59].  Akin to his minimum wage claims, Plaintiff has not, and cannot meet his burden to show that he and the Opt-Ins are similarly situated as to a common policy or practice violating the overtime provisions of the FLSA.

To reiterate, Plaintiff's bears the burden to "demonstrate that the Defendant[s] had a *common policy or plan* in violation of the FLSA *that negatively impacted the original and opt-in*

Plaintiffs." *Hernandez*, 2014 WL 5039431 at *4 (citations omitted). Plaintiff has not, and cannot carry his burden as to the alleged unpaid overtime premiums.

In opposition to this Motion, Plaintiff may try to argue that a common policy or plan in violation of the FLSA's overtime provision in 29 U.S.C. § 207 stems from Defendants' practice of providing paid 30-minute meal breaks and applying overtime premium rates after "42.5 hours." This position, however, fails to understand, or intentionally mischaracterizes, the meal break and its relation to overtime compensation. Under the FLSA, the overtime premium of one and half times the employee's regular rate of pay is required where 40 or more hours are *worked* in a given workweek. As stated in the Declaration of BTB's corporate representative, the paid 30-minute meal period compensated employees for time spent not working. **Exhibit 1** at ¶ 25.

29 U.S.C. § 207(a)(1) states, in relevant part, that "no employer shall *employ* any of his employees who in any workweek is engaged in commerce…production of goods…or is employed in an enterprise engaged in commerce…" The term "employ" is defined as "to suffer or permit to work." 29 U.S.C. §203(g). Merely because a lunch break is compensated does not mean that the time is included in the "hours worked." *O'Hara v. Menino* 253 F.Supp.2d 147, 154 (D. Mass. Mar. 31, 2003).[7] "This is not the law." *id.* (emphasis added).

Akin to the facts in *O'Hara*, the paid half-hour meal periods were for the benefit of the employees – not the employer. *O'Hara*, 253 F.Supp.2d at 154-155. "Bona fide meal periods are not worktime…These are rest periods." 29 C.F.R. § 785.19(a). "Bona fide meal periods" are breaks in which an "employee [is] completely relieved from duty for the purposes of eating regular

---

[7] Police officers' half-hour paid lunch periods were primarily for the benefit of the officers and not the employer, and thus, were not required to be counted as "hours worked" for purpose of calculating overtime under the Fair Labor Standards Act of 1928 (FLSA), where, although the officers were required to remain on-call during the lunch period and could not schedule a lunch period during certain hours, it was rare that an officer had to terminate his lunch period due to an emergency or that an officer who requested a lunch period was denied that request because of an emergency; the restrictions imposed did not prevent the officers from comfortably and adequately passing the mealtime.

meals." *Id*.  "A break is not a 'bona fide meal period' if the employee is required to perform any duties, whether active or inactive, while eating."  *Alonso v. 144 Ninth Gotham Pizza, Inc.*, 2016 WL 4257526 *1 (S.D.N.Y. Aug. 10, 2016) (quoting, *id*.).  "An employer need not pay employees for time spent on 'bona fide meal periods,' but must pay employees for 'meal break[s] during which a worker performs activities predominantly for the benefit of the employer."  *Id*. (quoting, *Reich v. S. New England Tele. Corp*., 121 F.3d 58, 64 (2d Cir. 1997)).

Notably, the Complaint [DE 24] does not allege that Plaintiff was required to work or engage in an activity for the benefit of the employer, so there can be no dispute that the paid meal breaks were bona fide rest periods that do not constitute "hours worked" under Section 207(a).  To be certain, the meal periods were solely for the benefit of Plaintiff and other employees.  BTB's Head Dispatcher was tasked to ensure that Plaintiff and other employees took their paid, 30-minute, lunch-break each day. **Exhibit 1** at ¶ 27.  BTB's policies did not permit any employee to engage in any work-related task or some other activity that was for the benefit of BTB.  *id*.

Plaintiff's claim regarding the "42.5 hour" requirement is nothing more than an attempt to obfuscate an additional half hour appearing on an employee's time clock for the day. During these meal periods, Plaintiff and employees were not required to clock-out.  Decl. of BTB Corp. Rep. *id*. at ¶ 25.  The obvious result of not clocking out during this break is that employee time records will merely reflect at least half-hour each day where no work was performed, and for which the employee received compensation where no right to payment existed. Substantively, the now discontinued practice of paid meal periods had no actual implication to the FLSA's 40 hours of work threshold for overtime premiums.  Plaintiff and other non-exempt employees were paid overtime premiums for every hour in excess of 40 hours worked.  Therefore, there is no common

plan or practice violating the FLSA that makes Plaintiff similarly situated with the Opt-In Plaintiffs.

## V.      Disparate Factual & Employment Settings Favor Decertification

There are several disparate and dissimilarities between Plaintiff and the Opt-Ins, as well as amongst the Opt-Ins themselves.  Neither Plaintiff nor any of the Opt-Ins had fixed or set work schedules, or a minimum/guaranteed number of shifts or hours in a given workweek.  In fact, BTB's written employment policies expressly holds that it does not promise or guarantee a set number or hours.  *Id*.  Moreover, the plaintiffs' records affirm that they began work at various different times and completed their work.  **Exhibit 1,** Composite Exhibit D.  They took their meal breaks at different times based on their catering schedule assignments.  Each of their work hours fluctuate based on the size, scope, and distance of a particular catering order or special event.  In turn, issues like travel time and supervision (or lack thereof), autonomy, and whether time was spent in between assignments/events or after events that were non-working, personal, or otherwise non-compensable.

For example, some assignments may require one or more catering assistants (or driver) to return to client's location to collect platters, serving utensils, coffee pots, etc. In such instances, the employees may not return to the 55th Street location or take longer to return to the catering department than the distance would require. Such circumstances become even more individualized and problematic considering that the Plaintiff or Opt-In is still "on the clock" but not engaged in compensable work.  The question then becomes what amount of time is compensable or non-compensable? The analysis and answers to these questions cannot be tried by common evidence or by commonality of claims.

## VI.     Individualized Defenses Warrant Decertification

Decertification is warranted due to the highly individual nature of the alleged overtime claim to each plaintiff.  "In cases where the evidence suggests a wide disparity in the relevant factual circumstances, the individualized defenses prong of the [decertification] analysis mirrors the disparate employment settings prong." *Hernandez*, 2014 WL 5039431 at \*6 (internal quote and cite omitted; alteration in original).   "Quite simply, a defendant cannot be expected to come up with 'representative' proof when the plaintiffs cannot reasonably be said to be representative of each other." *Id*. (internal quote and cite omitted).

With respect to alleged, but undemonstrated allegations regarding engagement in non-tipped activities, BTB can defend against many of the claims by demonstrating such work was *de minimis*, or that the work that plaintiff contends is a non-tipped activity is recognized as either a tipped activity or one that does not count towards 20% of the employee's workday.  *Zivali*, 784 F.Supp.2d 456, 467-68; *see*, DOL Opinion Letter, FLSA 2018-27 at 4 (Nov. 8, 2018) (noting that some of the time spent by a tipped employee performing tasks that are not listed in O\*NET may be subject to the *de minimis* rule contained in 29 C.F.R. §785.47).  As another example, to the extent a plaintiff contends that their duty to return catering items from a client's location back to 55th Street is a non-tipped activity, BTB has an individualized defense against this required activity for catering assistants.  *See*, Wage and Hour Opinion Letter WH-502 (Mar. 28, 1980) (concluding that a waitperson's time spent vacuuming after the restaurant was closed was subject to the tip credit).  To address any of these issues would require an individualized analysis and be subject to highly specific facts and circumstances unique to each individual plaintiff that may have such a claim.

Indeed, depending on the disparate facts and circumstances for each plaintiff, work-day and work-week the variances can raise potential minimum wage issues, overtime issues, or both.

For example, what percentage of working time may have been spent engaged in non-tipped activity, which must then in turn be analyzed based on the employees' total working hours for that work week, and the amount of tips received.

## VII.   Decertification Is Warranted Because Plaintiff Has Not Demonstrated A Sufficient Showing of Interest of Others to Join the Suit

Conditional class certification and notice to potential class members is not appropriate to determine *whether* there are others who desire to join the suit. *See Mackenzie v. Kindred Hosp. E., L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). Instead, a showing that others desire to opt in is required before certification and notice will be authorized by the court. *Barten v. KTK & Assocs., Inc.*, No. 8:06-cv-1574, 2007 WL 2176203, *2 (M.D. Fla. July 26, 2007); *see also Dooling v. Bank of the West*, No. 4:11-CV-00576, 2012 WL 2417591, *3-4 (E.D. Tex. June 26, 2012) (denying class certification when the only evidence Plaintiff offered in support of her allegations was her own affidavit and she did not submit affidavits of potential plaintiffs and failed to even identify potential plaintiffs); *Simmons*, 2007 WL 210008, at *9 (collecting cases requiring there be a showing that others desire to opt in before class certification); *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (stating courts have considered factors such as whether affidavits of potential plaintiffs were submitted).

Plaintiff has not demonstrated that people desire to participate in this action. Despite filing this lawsuit back in December, 2017 with mere cursory allegations, Mr. Hernandez has yet to articulate or proffer <u>any</u> evidence, affidavit, or information that would suggest that he has a claim, much less common practices that would warrant certification of a collective action.  In fact, closest the Complaint [DE 24] gets to alleging something more than vague conclusions are its references to Plaintiff's counsel previous lawsuit against Defendants.

WHEREFORE, for the foregoing reasons, the conditional collective action should be decertified and the Opt-In plaintiff's claims be dismissed without prejudice together with any further relief in Defendants' favor the Court deems just and appropriate.

Dated:  March 1, 2019
Jacksonville, Florida

Respectfully submitted,

**SMITH, GAMBRELL & RUSSELL, LLP**

By:   s/ *Todd R. Dobry*
Todd R. Dobry (*Pro hac vice*)
E-mail: tdobry@sgrlaw.com
Yash B. Dave (*Pro hac vice*)
E-mail: ydave@sgrlaw.com
50 N. Laura Street, Suite 2600
Jacksonville, Florida  32202
Telephone:  (904) 598-6100
Facsimile:  (904) 598-6247

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of March, 2019, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

C.K. Lee, Esq.
William Brown, Esq.
Anne Seeling, Esq.
Lee Litigation Group, PLLC
30 East 39th Street, Second Floor
New York, NY 10016

*Attorneys for Plaintiff*

s/ *Todd R. Dobry*
Attorney