```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
RAMON HERNANDEZ, et al.,                                         :
                                                                 :
                              Plaintiffs,                        :
                                                                 :              17-cv-9541 (LJL)
           -v-                                                   :
                                                                 :              MEMORANDUM &
BETWEEN THE BREAD 55TH INC., et al.,                             :                  ORDER
                                                                 :
                              Defendants.                        :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/16/2021

LEWIS J. LIMAN, United States District Judge:

The Court has before it Plaintiffs' motions for final approval of class settlement, Dkt. No. 183, for approval of attorney's fees and reimbursement of costs, Dkt. No. 188, for approval of service awards for the lead Plaintiffs, Dkt. No. 186. For the following reasons, the motions are granted.

## BACKGROUND

Plaintiff Ramon Hernandez was employed as a delivery person by Defendants from October 2012 until July 2017. On December 5, 2017, Plaintiff brought this action under the Fair Labor Standards Act, 29 U.S.C. § 215 ("FLSA") and the New York Labor Law, N.Y. Lab. Law § 215 ("NYLL"), alleging that Defendants failed to pay him and class members their proper wages, overtime premiums and tips, and also that Defendants failed to meet the NYLL's requirements on wage statements and notices. After a private mediation, the parties negotiated a settlement of the litigation.

The Court rejected the original settlement presented by the parties in this case. Dkt. No. 174. The reasons for that decision are reflected in the Court's order. *Id.* Thereafter, the parties

revised their settlement to address the Court's concerns. Dkt. No. 177.

On December 21, 2020, the Court addressed the revised settlement and granted Plaintiff's motion for an order conditionally certifying a settlement class, granting preliminary approval to a proposed class settlement, and directing dissemination of notice and related material to the class. Dkt. No. 178.

The Court held a hearing on the final approval of the settlement on May 5, 2021. No objections were filed to final approval of the settlement. However, the parties acknowledged that Defendants had failed to make one of the required settlement payments. The parties represented that Defendants would make the final payment shortly. The parties accordingly requested that the Court defer issuing a final order approving the settlement pending receipt of the final installment payment.[1]

By letter dated August 2, 2021, the parties advised the Court that the Settlement Administrator had confirmed receipt of the final installment payment from Defendants. Dkt. No.

---

[1] Under the Settlement Agreement: "Defendants agree to create a "Gross Settlement Fund" in the amount of $285,000, which shall fully resolve and satisfy any claims for (i) attorneys' fees, expenses and costs approved by the Court, (ii) fees to the Settlement Administrator and (iii) all amounts to be paid to all Authorized Claimants for releasing claims as set forth herein, and any Court-approved Service Awards." Dkt. No. 167-1 § 3.1(A). Further, "Defendants shall fund the Gross Settlement Fund into the escrow account of the Settlement Administrator as follows: (i) no later than 30 days after the execution of this Settlement Agreement, $100,000 shall be funded into the escrow account of the Settlement Administrator ("Initial Payment"), (ii) thereafter, $30,833.33 shall be funded into the escrow account of the Settlement Administrator on the first business day of every month ("Installment Payments"), beginning as of January 1, 2021, until either (i) the entire Settlement Amount has been funded, or (ii) if a lesser amount is determined to be sufficient to satisfy all required distributions, such lesser amount has been funded." *Id.* § 3.1(B). The Settlement Agreement contained a provision for the return of the funds in the escrow account if the Court denied final approval of the settlement and if certain other conditions were met: "If the Parties do not jointly agree to seek reconsideration or appellate review of the decision denying entry of Judgment and/or a mutually agreeable settlement agreement cannot be reached by the parties, the Gross Settlement Fund shall be returned to Defendants' Counsel, less administration fees of $35,000, within 5 days of a court order denying final approval of the settlement." *Id.* § 2.11.

2

195.

## DISCUSSION

**I.      Final Approval**

In order to grant final approval of a proposed settlement under Federal Rule of Civil Procedure 23(e)(2), the Court must find "that it is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Under Rule 23(e)(2), the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i)    the costs, risks, and delay of trial and appeal;
>   (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv)   any agreement required to be identified under Rule 23(e)(2); and
> (D) the proposal treats class members equitable relative to each other.

Additionally, courts in the Second Circuit consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), to determine whether the standards of Rule 23(e)(2) have been met. These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

With respect to the first *Grinnell* factor, litigating this case through the conclusion would be long, costly, and complicated. There are 1,047 putative class members with claims under state and federal law. Many of these class members may be difficult to find. A trial would be costly, and a judgment would likely be appealed.

With respect to the second *Grinnell* factor, there is no evidence that the reaction of the class has been negative. The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). No class members have objected, and only four have opted out of the settlement. These facts weigh in favor of a finding that the reaction of the class has not been negative. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

With respect to the third *Grinnell* factor, the parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ("[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit.") (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)). This factor favors settlement with less force than the others. Counsel conducted interviews with the named plaintiff and reviewed "a sampling" of employment records and documents from other employees before beginning

settlement discussions. This is a relatively modest amount of discovery, but not an amount insufficient for settlement. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement of case "in relatively early stages of discovery" where the parties had exchanged extensive information and counsels' negotiations had not been "collusive").

With respects to the fourth and fifth factors, there would be substantial risk to Plaintiffs if the case should proceed. Plaintiffs would face the risk of losing at trial, and furthermore would face risks that the proposed class would not be certified.

With respect to the sixth *Grinnell* factor, there is a risk that establishing a class and maintaining it through trial would not be simple. As Plaintiffs observe: "The claims at issue are vulnerable to a highly individualized analysis on a person-by-person basis, such as which, if any, class members were required to work overtime hours at the regular pay rate and how often, what their primary language is, and what their individual understanding was regarding the content of the wage notices and wage statements provided by Defendants." Dkt. No. 184 at 27-28.

With respect to the seventh *Grinnell* factor, it is highly unlikely that Defendants could withstand a higher judgment. Defendants' business has not been operational since March 2020, when the COVID-19 lockdown measures went into place in New York City. Further, the principal owner and operator of Defendants has passed away. *Id*. at 28. This factor thus weighs in favor of the settlement.

With respect to the eighth and ninth *Grinnell* factors, the settlement fund is a good value in light of the risks associated with litigation and collection. All class members who do not opt-out will receive payments, for an average amount of $293.08. Although this amount is less than the amount Plaintiffs would receive if they succeeded at trial, this settlement "represents a significant percentage of the recovery that Plaintiff would have achieved had he prevailed on all

of his claims and survived an appeal due to Defendants' available defenses and current financial situation." *Id*. at 29.  Even if Plaintiffs obtained a greater judgment, there is reason to believe that Defendants would not be able to pay it.  Settlement is accordingly reasonable under this factor.

Because the *Grinnell* factors favor settlement, Plaintiffs' motion for final approval of the settlement agreement is granted.

## II.     Attorney's Fees

Plaintiffs' counsel seeks an award of $95,000, or 1/3 of the settlement fund, which Defendants do not oppose.  Dkt. No. 189.  The Court evaluates the fairness of a proposed fee award under both a percentage method and a lodestar method.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  Under the percentage method, the Court examines the fee as a percentage of the recovery.  *Id*.  Under the lodestar method, the Court "multiplies hours reasonably expended against a reasonable hourly rate" and may then, in its discretion, "increase the lodestar by applying a multiplier based on" subjective factors.  *Wal-Mart Stores*, 396 F.3d at 121.  Regardless of the method the Court uses, the reasonableness determination is guided by six factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation []; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at 50.

The *Goldberger* factors counsel in favor of granting the request for approval of the settlement.  With respect to the first factor, the time and labor expended by counsel, Plaintiffs' counsel has averred that it spent 172 attorney and paralegal hours prosecuting the case.  Dkt. No. 185 ¶ 7.  The complaint in this case was filed in December 2017, and it was amended twice. Extensive settlement discussions were involved in reaching the final settlement.  Counsel also

6

briefed the motions for preliminary and final settlement approval. In total, Plaintiff's counsel spent 172 hours of attorney and paralegal time on this case for an aggregate lodestar of $99,104.00.

With respect to the second *Goldberger* factor, the requested fee award is commensurate with the magnitude and complexity of the litigation. The case involved claims on behalf of several hundred employees and mixed questions of law and fact under both state and federal law. This factor weighs in favor of the fee award.

With respect to the third *Goldberger* factor, the litigation risks weigh in favor of the fee award. Plaintiffs' counsel took this case on contingency. *See Grinnell*, 495 F.2d at 470 ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."). Counsel bore the risk that there could be no recovery at all, in which case they would bear all the costs associated with the litigation.

With respect to the fourth *Goldberger* factor, the quality of the representation was high. "To determine 'the quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004)). Defendants agreed to pay $285,000 to settle the case. Furthermore, class counsel has substantial experience prosecuting wage and hour cases.

With respect to the fifth *Goldberger* factor, the size of the requested fee award is proportionate to the size of the award. Courts in this Circuit have routinely granted requests for settlements of approximately one-third of the fund in cases like this one. *See, e.g., Mohney v.*

7

*Shelly's Prime Steak*, 2009 WL 5851463, at *5 (S.D.N.Y. Mar. 31, 2009); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6 (S.D.N.Y. Feb. 18, 2011); *Clark v. Ecolab Inc.*, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010).

The lodestar cross check additionally supports the requested fee award. Plaintiff's counsel has calculated its lodestar amount at $99,140.00, which results in a lodestar multiplier of 0.95x against the requested fee award of $95,000. Dkt. No. 183 at 1. Courts in this Circuit have found that substantially higher lodestar multipliers support a fee award. Furthermore, the Second Circuit has held that "the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)). Accordingly, a below lodestar requested fee is reasonable. Additionally, the Court notes that the lodestar figures provided by Plaintiff do not include the substantial number of hours devoted to this case by a senior associate at the firm in the case's early years.

Furthermore, no class members have objected to the award, a fact which counsels in favor of approval. *See, e.g.*, *Zelster v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014).

For these reasons, the request for attorney's fees is granted.

**III.   Service Awards**

Plaintiffs move the Court to approve service awards to the named plaintiff and to five class representatives in the amount of $5,000 each for a total of $30,000. The request is granted.

In examining the reasonableness of a requested service award, courts consider:

> the existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the protection of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained

> by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.

*Frank*, 228 F.R.D. at 187. "[S]ervice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Reyes v. Altamera Grp., LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011).

The service awards here are large relative to the average recovery for class members. For that reason, the Court requested supplemental briefing regarding the justification for the size of the award and the work each named Plaintiff performed to justify such award as well as how the size of the award related to the recovery for absent class members. Dkt. No. 170. The Court expressed concern about the relationship of the service award to the pro rata distribution to the absent class members and the effects of the size of the serving award in diminishing the funds that would be available to the absent class members. Dkt. No. 172 at 11. Counsel provided such information at the preliminary approval stage while at the same time urging that the size of the awards would not be before the Court until the time for final approval. Dkt. No. 171. Each service award would represent 1.75% of the settlement and collectively 10.5% of the total recovery but when attorneys' fees and costs were taken into account, each service award would be 3.34% of the Net Settlement Fund or, collectively slightly more than 20%. *Id.* at 4. In its order rejecting the original settlement in this case, the Court agreed that it would be premature for the Court to approve or disapprove the requested service awards but also required that if the settlement were revised to meet the Court's concerns, the notice to absent class members should specifically inform them of the right to object to the service awards at the fairness hearing. Dkt. No. 174 at 29-31.

A revised settlement proposal was submitted and approved and the approved notice informed absent class members specifically of their right to object to the requested award or attorneys' fees or service awards. Dkt. No. 178; 177-2 at 6. Counsel submitted additional briefing in support of the service awards. The named plaintiff and the class representatives will be paid $5,000 each, while the average class member's recovery will amount to $293.08. Dkt. No. 184 at 29. There were no objections to the service awards.

The Court directed counsel to be prepared to address at the fairness hearing the percentage of the proposed settlement that would be paid to the named plaintiff and class representatives (including as service awards) as well as the estimated median and mean recovery for members of the settlement class. Dkt. No. 192. At the hearing, the Court inquired about the service awards. By subsequent letter, counsel confirmed that the individual damages suffered by the named plaintiff and class representatives, both individually and collectively, were less than they would receive from the class settlement including the service awards. Dkt. No. 193. In other words, as counsel argued, the named plaintiff and class representatives had compromised their individual interests by settling the action on a class basis.

The Court has "closely scrutinized" the payments to the class representatives. *See Silberblatt v. Morgan Stanley*, 524 F. Supp.2d 425, 435 (S.D.N.Y. 2007); Dkt. No. 174 at 30-31. Upon close consideration, the Court concludes that the service awards, though large as a relative matter, are fair and reasonable in this case. The class representatives have made important contributions to this lawsuit on behalf of the class. *See, e.g.*, *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 80 (E.D.N.Y. 2008) (holding that class representatives play an important role by "enabling plaintiff to redress wrongs . . . [w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages"); *Velez*

*v. Majik Cleaning Serv.*, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a while, undertaken the risk of adverse actions by the employer or co-workers."). Plaintiffs' counsel avers that the Class Representative assisted in the prosecution of the claims and "provid[ed] detailed factual information regarding job duties, hours worked, wages paid, and other information relevant to the claims." Dkt. No. 167 ¶ 9.

Plaintiffs took on risk in litigating this case. Defendants' business is no longer operating and neither the Named Plaintiff nor the Class Representatives still work there. However, these individuals still took on risk in filing this lawsuit because of the risk to their ability to secure future employment. *See Guippone v. BH S & B Holdings, LLC*, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person.").

Moreover, the service awards are intended, in part, to incentivize individuals to come forward and serve as named plaintiffs and to compensate and reward them for their service to the class, particularly when they were under no obligation to do so and could have prosecuted the matter on an individual basis. Here, importantly, the evidence before the Court establishes that not only did the named plaintiff and the class representatives take a smaller service award than that customary in the District as a result of Defendants' financial condition, but—as counsel represented—they also took a service award that was smaller than what they likely could have achieved in settlement had the case been pursued on a purely individual basis, rather than as a collective action. The named plaintiff and class representatives will be receiving much more from the settlement than the absent class members. However, had the named plaintiff not agreed

11

to settle on a classwide basis and had he not contributed his service, it is possible that the absent class members might have recovered nothing.

Finally, the notice that the Court ordered has served its purpose. While 92% of the class was informed of the settlement, and was specifically informed of the requested attorneys' fee award and services awards and of their right to object, none has objected to any part of the settlement including the attorney fee request or the service awards. Perhaps the members of the class recognize—as the Court does—the service to the class provided by the named plaintiff and the class representatives.

For these reasons, the motion for service awards is granted.

## CONCLUSION

Plaintiffs' motions for final approval, for attorney's fees, and for service awards are GRANTED. The Clerk of Court is respectfully directed to close Dkt. Nos. 183, 186, and 188 and to close the case.

SO ORDERED.

Dated: August 16, 2021
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge